Summary judgment, my name is Brandon Laird and I represent the appellant defendant Detective Klipsch and we believe that summary judgment should have been granted in favor of Detective Klipsch for both of the two tasings. First of all because we believe that the use of the amount of force that was used on both tasings was reasonable as the court found in the first tasing that it was reasonable but that the second tasing was also reasonable and second even if we find that it wasn't at this time in the 8th circuit it was not clearly established that that use of force on a fleeing suspect who had not who on whom the officer was attempting to affect the arrest it would not be clearly established that it would violate his constitutional rights. I first believe that the that parsing out the two tasings I think was an error this was one event they were attempting to affect the one arrest on the suspect Mr. Graham he was fleeing the undisputed the the uncontroverted facts are that he was fleeing the scene a gun had been discarded Detective Klipsch had stated that he was under arrest had asked for him to stop running and warned him of the use of the taser which was then deployed. Well wouldn't it wouldn't it make a difference for the as a meaningful distinction between the first and the second if prior to the second the individual was no longer either in flight or attempting to resist? It would make a difference in the analysis I don't just that in a vacuum there were other orders there was another order that was given by Detective Klipsch but in it would affect the analysis of it however Detective Klipsch testified in his deposition he fired the first taser after the it did he used the word incapacitate on the next line of questioning clarifies that it knocks him down as soon as the five-second burst from the tasing ended he gave him Detective Klipsch gave Mr. Graham orders to put his hands behind his back and to stay on the ground to which Mr. Graham did not comply with either and was attempting to get back up. So what he meant by after the cycle had passed that five-second burst is that what he meant? Yes he that's yes so when he deployed that that was okay so I wondered what that meant exactly was that in the record what that meant? Yes in his deposition he clarifies I think in the next couple of pages he after so about page 103 I think in the record he clarifies he fires the taser it's got two prongs with it and then it releases a charge that lasts for five seconds during that five-second charge that electronic shock knocked Mr. Graham to the ground Detective Klipsch at the end of that cycle began to give continued commands to Mr. Graham again to put his hands behind his back and to stay on the ground neither of which Mr. Graham complied with he began to get back up and in Detective Klipsch's perceptions he was certainly from Detective Klipsch's perceptions he was appearing to attend a run and therefore the second the second burst was then administered by Mr. by Detective Klipsch. The difficulty is that that testimony here was that quote he was incapacitated. Yes he does testify in that to the answer to that question that it incapacitated him the very next question I believe was but he still had some fight in him to which the response was the first burst knocked him down as the cycle ended I began to give him commands with which he did not comply and not only did he not comply he was actively not simply did he not comply and that he didn't put his hands behind his back but he was attempting to actively get back up. I guess you're arguing this as though we're on summary judgment over it's not I mean this is I mean the appeal is up here on the qualified immunity. It was qualified immunity on the second was denied for the second. Yeah that's the whole that's why you're here. That's why you're here. Yes. So what you're describing is a fact dispute. I'm sorry. It sounds like what you're describing is there's a factual dispute where the officer believes the individual continued to resist after the first days but his his own comments lend themselves to a position of the resistance. So there's a question of fact that could be material or sounds material and sounds potentially crucial to this case as to whether or not there was continued resistance prior to the second firing of the taser. So my answer to that I think is in two parts the first one is it's not controverted that after the first hazing Mr. Graham refused to comply with the order put his hands behind his back and began to get back up and in fact even in Mr. Graham's own brief in a statement of facts and in his argument on pages 2 and 10 he states Mr. Graham then began to get back up and did not comply with those orders. So what Mr. Graham did after the first hazing is not in any way disputed. Okay so you're saying that the facts are undisputed that he did attempt to continue flight. Yes. After the first hazing. Yes your honor. And he yes he began to get back up. I think the the issue with the term incapacitated being stated by the officer and then in the deposition and the answer to that question reading the deposition in its entirety including the following questions indicates. I think you have a great argument for the district court. I think your difficulty if you have one is that on qualified immunity we can't all we have up here is pure questions of law we can't we cannot find facts contrary to what the district court found. The district court didn't find anything subsequent to the term incapacitated. The analysis from the incapacitated him period and there was nothing that followed after that. There's no dispute of fact as to what happens next. Well I think that this report may have found contrary in which case not much we can do about it. If I suppose then they would have had to have found the contrary by finding that the that the defendant's own testimony controverts himself which it doesn't really do. He testified that it incapacitated him and knocks him down. But anyway you see what I'm you see what I'm saying. I think I understand but I don't I guess my. On the qualified immunity appeal all we can do is decide pure questions of law. Facts that have been determined by the district court are not subject to any kind of review clearly erroneous or otherwise. We have to accept those because it's the summary judgment motion is not up here it's only the qualified immunity motion. You see what I mean? I understand what you're saying and and we're not bringing an issue well we're not bringing an issue of fact this is a question of law. I know you don't think you are. I don't believe we're bringing an issue. If you said that it'd be fatal to your case so I don't expect but what I'm suggesting you is that that may in fact be what's happening here and if it is then you know the odd thing here is that if your defendant hadn't said anything then there would be if he hadn't used the word incapacitated we probably wouldn't be here. I agree but I I agree with that but I don't think that that changes any of the facts there's not a factual dispute it's just a question of law as to whether or not. I'll take a closer look at it. Is what? I'll take a closer look at it. Okay. I really don't believe that there's any question of fact as to this I believe that this is simply a question of law. Is there somewhere in the records you can cite where Graham essentially concedes that he tried to get back up? No. Mr. Graham doesn't testify to anything. He testifies that he was tased once in a completely different location. He said he doesn't remember. That's correct. So you've got nothing on his side. That's correct. And you but and the only something you've got is what your client said. As far as? If you have a something. So this may be a case where you you know you can be you can have something and get beat by nothing. Which is an odd case but if that might be it that might be the case. But you're right I mean Mr. Graham says I don't know what happened. He doesn't know what happened but he also is bound by the facts that were found in his criminal case. So the fact that he states I don't know what happened. We do have a record outside of just Detective Fletcher's testimony. But do you think the estoppel goes that far in this case? I think it would go as I do because the because Mr. Graham's statement is I I was tased at a completely different location. So I think and then I don't remember anything and I woke up and I was in a completely different location than where it was found in the criminal case. So I do believe he would be estopped from even even saying that much. Because it would render the criminal case impossible. If he was still on the on in front of that residence the entire time. So I do think that there is then a record outside of just what Detective Fletcher stated. And as I said I don't believe that there's any fact that's in actual dispute here. What did the district court do with your estoppel argument? The district court used the estoppel argument up to the first tasing. And essentially said found all of the facts consistent with Detective Fletcher's testimony up until the word incapacitated. He fires the first the first tase or he was incapacitated. All of that would be consistent with the suspect at least at least would preclude qualified immunity. We have a case I think it's called Henderson against Munn which seems to indicate that we have declined to review the scope of collateral estoppel on appeals based on qualified immunity. Do you have any comment on that? I I don't because I don't think the scope of the qualified of the claim preclusion is what's really at issue here. The district court found consistent with the claim preclusion up until up until the tasing. So the district court essentially said that the the criminal case's record is what holds here and found those facts. The issue that we're presenting is it stopped at the word incapacitated and the uncontroverted facts indicate that that's not where this should have stopped. That it was reasonable under the matter under a matter of law to to tase Mr. Graham the second time because he was continuing his flight. If there are no other questions at this time I'd like to reserve the last two minutes and 55 seconds for rebuttal. Thank you Mr. Laird. Thank you. Mr. Ensler. Good morning, your honors. Charles Ensler on behalf of the plaintiff at the Lee, Frederick Graham. This appeal presents one issue. Whether or not Detective Klipsch is entitled to qualified immunity even though he tasered Frederick Graham a second time while he was incapacitated, while he was not fleeing, and while he was not resisting arrest. And the answer is that he was not entitled to qualified immunity. That's what the district court found and this court should affirm that ruling. And when the district court affirmed and when the district court found that Detective Klipsch was not entitled to qualified immunity, it made five factual findings. And those factual findings are in the record on addendum A6. The first finding was that at the time of the second burst, Graham was incapacitated. The second was that he was on the ground. The third finding was that Graham had just been tasered on the ground. The fourth finding was that Graham was not posing a threat of violence to anyone, including the officers in the vicinity. And the fifth factor was that Graham was not escaping. So the argument that Frederick Graham is getting up means that he's fleeing was directly contradicted by the district court. The district court found that he was not escaping. And so when Detective Klipsch directed him to get back on the ground, how do you answer the criticism that that factual finding just really distorts the statement that the defendant made? That, in other words, properly construed what the defendant was saying was that he was temporarily incapacitated and then tried to get up after the cycle ran. So how do you answer that? How do you answer someone who would say that's the proper interpretation of the testimony? I think the detective's testimony was that Graham was not obeying him. And he was tasered. I think the fact that he was incapacitated means he was not able to flee. But he still may have had some ability to get up off the ground. But none of that would give Detective Klipsch qualified immunity. The uncontestable baseline for what this case is about. And your honors have Okay, why is that? Because they're not reviewable. Okay. And you all stated that, that's what that's the Thompson case that that's what I was looking at. If you have qualified immunity, there is no ability to reevaluate the case. The only issues are abstract legal issues. And so once we have these set of facts within which to work, the outcome is clear. Detective Klipsch is not entitled to qualify immunity. And we can go through the analysis. Was there a constitutional violation? Yes. The taser constitutes a serious use of force. It's a very dangerous weapon. It's capable of administering 50,000 volts of electricity. It can kill, as cases illustrate. It causes excruciating pain, it paralyzes the muscles, it can burn your flesh. So before an officer uses a taser on a suspect, he has to be aware of those considerations. And it's a constitutional violation, therefore, to use a taser on a suspect who's not resisting, who's not fleeing, and is incapacitated. And those principles are applicable to all public cases from across the country. And I think it's also worth noting that the special order from the city of St. Louis on the use of tasers conforms with this case law. The Joint Appendix on pages 296 and 298 gives very specific rules and regulations for when police officers may use their tasers. And at 296, it says, in an underlined note, that the taser is not to be used to ensure compliance. And it also states that it's not to be used on a passive subject. But that's what we have here. We have a passive subject. Mr. Graham was incapacitated. And that's according to Detective Klipsch's own testimony. And then at page 298, the So at this point, the officer says that the defendant, or the plaintiff here, attempted to get up and continue flying. The plaintiff doesn't recall that. That's the different versions here. Yes, my client has testified that he was knocked unconscious after the first taser application. Does not remember anything that happened after that. So there really isn't any controversion or controverting of the officer's statement that he tried to get up? Not by my client, no. Was there someone else present? No, I don't believe there was another detective, Detective Manley, but I don't believe he was in the vicinity. So the only evidence about what happened after the first tasing is Officer Klipsch that the defendant, or the plaintiff, tried to get up and continue flying? Yes, that's correct. So if this case proceeds and goes to trial, what's going to be the fact issue and what will be the evidence that the jury will have to evaluate? Well, I think I wanted to stop you, Judge Smith, because I think there's a discrepancy between getting up and fleeing. I don't think those two necessarily go together. Mr. Graham could certainly be getting up, but without the intention of fleeing. But if he's getting up, he's getting up in contravention to the commands he's been given? Yes, but you may not tase just for non-compliance. That's a form of passive resistance to my mind. He can get up, and Detective Klipsch has many other options at his disposal before he tases him. He could put him in handcuffs. He could try to wrestle him to the ground. There's another officer in the vicinity. There were two officers in this case at the time that were investigating what was going on. So there's a lot of different options at the officer's disposal before they tase him a second time. And I think on trial, the issue for the jury will be, given Mr. Klipsch's testimony that he tased him just for getting up, is that a violation of his constitutional rights? So the trial in this case is essentially going to turn on the jury's evaluation of the cross-examination of Officer Klipsch? In all likelihood, yes, because given some of the collateral estoppel issues, yes. They wouldn't have to believe the testimony. And I would say that all of our arguments are based on the district court's factual findings and Detective Klipsch's own testimony. None of our arguments rely on any testimony from Frederick Graham. And we think the case law is also very clear that these rights were clearly established as September 2014. The Brown, Shackleton, and Smith cases, all from the Eighth Circuit, clearly established that tasers may not be used against non-violent, unarmed suspects and may not be used to ensure compliance. If you look at some of the other Eighth Circuit cases from 2000, the Brown case and the McKinney case, they say that the law on tasers was still are still evolving in 2019. And finally, I would say that the law favors cases being decided on their constitutional merits. We don't need to be deciding cases on qualified immunity grounds where there's a real issue of fact for a jury to determine. And I would say that none of the cases that Detective Klipsch cites involved a second taser application for an individual who was incapacitated and when it was done to ensure compliance with police directives. What was the second part about compliance? That none of the cases involved both facts that there was an individual who was incapacitated and that the taser was being used to ensure compliance with police directives. I don't understand if he's incapacitated, why would there be a need to use the taser compliance? Well, we have that situation right here where he's incapacitated, but he's being told to get back on the ground and he's tased for failing to do so. Okay. And if your honors do not have any other questions, I would submit my case. All right. Thank you, your honor. Thank you, Mr. Inslaw. Mr. Laird, your rebuttal. Thank you, your honors. I think most of the argument that we heard from Mr. Graham I think articulates why that this is a proper issue for review here. The fact that the argument being used consistently that the taser was being used for compliance, it can only be used for compliance if he's not complying. There was no order from the district court that he was incapacitated, but as you heard today, there's no dispute that Mr. Graham was not complying with the orders that were being given. So certainly there's no dispute that Mr. Graham was not, I guess, fully incapacitated and simply on the ground. There is no dispute that he was not complying with orders and whether or not he was getting up to flee or just simply getting up, this would be from the officer's perspective. The fact that there is case law that says on a non-violent, non-resisting, non-fleeing suspect, a taser might be inappropriate, but there would be nothing in this case with the factual pattern that is, that has been adopted by the district court. It would not be reasonable for detective Clips to have known at the time that Mr. Graham was unarmed. He had already seen at least one weapon. He would not go in to actually affect the arrest under the assumption that he was now simply an unarmed, an unarmed suspect. And I think that the continuous arguments that it was being used to ensure compliance because Mr. Graham was not in fact complying at the time, go to the issues that this is not really an issue of fact. This is an issue of applying the law of qualified immunity that the use of force on Mr. Graham was reasonable. And to the extent that there's even a question as to that, a fleeing suspect would not have a clearly established right after being given warnings, being told he was under arrest, and before the second tasing, again, being given warnings that another taser burst would be administered. It would not be clearly established right to be free from being tased at that time. If there are no further questions, your honors, I have nothing further. Thank you, Mr. Laird. Thank you also, Mr. Enzler. We appreciate the argument you provided to the court and the briefing you submitted will take your case under advisement. And Ms. Enzler, I also note you're serving as appointed counsel, appointed by the court. And the court, we thank you for your willingness to serve in that capacity. Madam Clerk, I believe we have